ROBERT L. BLAND, Judge,
Concurring.
These cases are prosecuted upon the theory that the state road commission as principal, through Taylor, as agent, committed the tort which caused the damages for which awards are sought, in the total sum of $17,250.00. While I steadfastly maintain that in the absence of voluntary assumption of liability, the state is not liable for the torts or negligence of its officers or agents, the doctrine of respondeat superior not being applicable to the state, nevertheless, upon the issues tendered by the record I am fully in accord with the views expressed in the majority opinion written by Judge Smith. It is only when acts done by command or while within the scope of em *208 ployment that a principal or master is responsible for the acts of his agent or servant. That situation does not exist in these cases. It is generally understood that the principal is not responsible for the acts of his agent not within the scope of the employment.
In Clark v. Buckmobile Company, 107 App. Div. 120, 94 New York Supp. 771, it is held that in an action brought to recover damages for personal injuries sustained by the plaintiff in consequence of being struck by an automobile owned by the defendant, the fact that the persons in charge of the automobile at the time of the accident were employees of the defendant does not render the defendant responsible for their negligent acts unless they were then engaged in the defendant’s business.
Whether or not the road commission, an agency of t he state, is responsible for damages sustained by the claimants by the negligence of Taylor.rests upon and must be determined by the inquiry as to whether or not Taylor, at the time of the accident, was acting as agent or employee of the road commission within the scope of his employment.
Although the evidence shows that Taylor was an employee of the state road commission it does not show that at the time of the accident he was acting within the scope of his employment. It is not sufficient to show agency only. It is necessary to show connection of the accident with the employment, which has not been done.
Taylor was employed in the survey department of the state road commission. He was in charge of a crew of seven persons, including himself, whose duties were chiefly in the held. He was designated as party chief or chief of the crew. He was a transit-man, anyone in charge of the survey party having the title of chief of the party. The party ran elevations and made cross-sections. Taylor went to work for the commission in 1927, and left its employ between 1941 and 1942. He was reemployed in 1943, When Taylor reentered the employment of the road commission and was assigned to a project, *209 a station wagon which had been obtained from the Army and fitted for field work was placed at his service for such work. For a period of approximately two months the crew had headquarters at Parkersburg. After the completion of that job it began work in another section, between Sandyville, West Virginia, and Liverpool, Ohio, having headquarters at Ripley, in Jackson county. On Saturday, July 14, 1945, the crew quit work about twelve o’clock noon. Its members went to the hotel at Ripley. While there Taylor checked his notes, the work requiring something like an hour. He also went out to a hardware store for the purpose of purchasing some sandpaper for an old gentleman who was finishing a gunstock for him, this action not being in any way connected with his employment by the road commission. From Ripley, Taylor and others went to Spencer, in- Roane county, where he arranged at a hotel for lodging for members of his crew during the following week. After this he started in the station wagon, which he used in the field, for his home at Walton. When he left Spencer the vehicle was driven by John Louis Walker', a member of his crew. Later Taylor took the wheel of the station wagon. When within two and one-half miles north of Walton, Taylor collided with a motor vehicle in which the claimants were driving. He was intoxicated at the time. Walker was injured in the collision and later received compensation from the workmen's compensation fund; compensation, by the way as shown by the record, which would not have been paid if the true facts had been certified and known by the department.
It is shown by the testimony of L. C. Madden, engineer of plans and surveys, who had overall supervision of Taylor and his crew, that no permission or consent was at any time given to Taylor to use the station wagon in going to his home at Walton on week ends. His use of the station wagon was confined and limited to the field work which he was employed to do for the road commission.
It is manifest from the evidence that at the time of the accident Taylor had finished his work for the road commission for *210 the week and was on his way to his home at Walton, where Walker also resided. He was about his private business. He was on his own personal business, in no way connected with the business of the road commission, and, cosequently, was not at the time of the accident acting as agent of the road commission, nor in the scope of his employment. He was not in'any respect acting under orders of the road commission. He was not performing any service for the state, being merely on his way to his home.
"Where the chauffeur commits injury while driving for himself his employer is not liable.'’ Huddy on Automobiles, Section 284, 4th Ed.
Tested by recognized authority of law claimants have failed to show that they are entitled to awards in these cases. Lamentable as the accident is shown to have been, it would be a miscarriage of justice to recommend an appropriation of the public revenues by way of awards. The interests of the taxpayers cannot be overlooked.